(January 20, 1915.)

## E. H. JENNINGS, Respondent, v. IDAHO RAILWAY, LIGHT & POWER COMPANY et al., Appellants.

[146 Pac. 101.]

FOREIGN CORPORATIONS—NONRESIDENT ALTHOUGH COMPLYING WITH LAWS OF STATE — NOT EXEMPT FROM ATTACHMENT — IMMATERIAL ASSIGNMENTS OF ERROR WILL NOT BE CONSIDERED AND DETERMINED.

1. Under sec. 2792, Rev. Codes, which provides "That foreign corporations complying with the provisions of this section shall have all the rights and privileges of like domestic corporations, including the right to exercise the right of eminent domain, and shall be subject to the laws of the state applicable to like domestic corporations," such corporation is not a citizen or resident of this state within the meaning of the foreign attachment laws, and is not exempt from attachment as a nonresident.

2. A corporation organized under the laws of a foreign jurisdiction, although engaged in business in this state and having complied with the constitution and all the laws of this state affecting foreign corporations, is a nonresident and subject to attachment as such.

3. Where counsel for respective parties agree that should the conclusion of the court be adverse to the contention of appellant upon one question, the remaining objections assigned become immaterial, and when it appears from the record that a consideration

of said questions is not necessary to a final determination of the cause under consideration, the same will not be decided by the court.

APPEAL from the District Court of the Third Judicial District, in and for Ada County. Hon. Chas. P. McCarthy, Judge.

Action to recover on a promissory note. Attachment issued and the court refused to discharge the attachment. *Affirmed.*

Cavanah, Blake & MacLane, for Appellants.

No attachment can be issued against a domestic corporation in an action on a secured debt, and, therefore, if foreign corporations have the same rights and privileges, and are subject to like laws, no attachment can be issued against them in such cases. (6 Thompson on Corporations, ed. 1895, p. 6420, sec. 8060; *Farnsworth v. Terre Haute etc. Ry. Co.,* 29 Mo. 75; *Martin v. Mobile etc. R. Co.,* 7 Bush (Ky.), 116; *Burr v. Co-operative Construction Co.,* 162 Ill. App. 512; *Hackettstown Bank v. Mitchell,* 28 N. J. L. 516.)

Nonliability to attachment is a right or privilege of domestic corporations, and it is further certain that the attachment law is one of the laws of the state applicable to domestic corporations. If the statute is to be given meaning and effect, the construction here suggested would seem to be the only possible one. Furthermore, this construction is in harmony with the spirit of the attachment laws against nonresidents, the purpose of which is to enable a citizen of the state to acquire jurisdiction against a nonresident defendant to the extent of property of the nonresident within the state. The attachment is allowed in order to compel the defendant to come forth and allow his indebtedness to be litigated. (*Blair v. Winston,* 84 Md. 356, 35 Atl. 1101; *Herbert v. Herbert,* 49 N. J. Eq. 70, 22 Atl. 789; *Munroe v. Williams,* 37 S. C. 81, 16 S. E. 533, 19 L. R. A. 665.)

Richards & Haga and McKeen F. Morrow, for Respondent.

The authorities are uniform that the domicile, residence and citizenship of a corporation are in the state where it is

created, and that where the corporation is not domesticated, that is, reincorporated in other states where it does business, it can have but one domicile, one residence, and one citizenship, and that is in the state issuing its charter and maintaining supervision and control over the corporation. (*Cowardin v. Universal Life Ins. Co.*, 32 Gratt. (Va.) 445; *Barbour v. Paige Hotel Co.*, 2 App. Cas. (D. C.) 174.)

"A corporation chartered by a foreign state is a foreign corporation and is liable to attachment as a nonresident debtor, although it may have an office and do business in the state in which the attachment is issued." (*Boyer v. Northern Pacific Ry. Co.*, 8 Ida. 74, 66 Pac. 826, 70 L. R. A. 691; Shinn on Attachments, sec. 105; *New York Life Ins. Co. v. Pike*, 51 Colo. 238, 117 Pac. 899; 5 Thompson on Foreign Corporations, 2d ed., sec. 6629; Cook on Corporations, 7th ed., sec. 1.)

The domicile, residence and citizenship of a corporation are in the state where it is created. (Beale on Foreign Corporations, secs. 111, 113, 211; *Waechter v. Atchison, T. & S. F. Ry. Co.*, 10 Cal. App. 70, 101 Pac. 41; *Voss v. Evans Marble Co.*, 101 Ill. App. 373.)

Appellants should not be heard to contend that respondent holds security and cannot therefore attach the railway company's property. The evidence is uncontradicted that the appellant railway company has done everything in its power to destroy the security which it pledged with respondent. The lien must be a lien of a fixed, determinate character, capable of being enforced with certainty, and depending on no conditions. (*Porter v. Brooks*, 35 Cal. 199; *Watson v. Loewenberg*, 34 Or. 323, 56 Pac. 289; *Bowman v. Wade*, 54 Or. 347, 103 Pac. 72.)

BUDGE, J.—On the 6th of November, 1911, the Idaho Railway, Light & Power Company, a corporation organized under the laws of the state of Maine, made, executed and delivered its promissory note to one E. H. Jennings for $180,000, payable two years after date, bearing interest at the rate of six per cent per annum from July 6, 1912. In order to secure

the payment of the above obligation, the Idaho Railway, Light & Power Company deposited with the said Jennings as collateral security 1,200 shares of the preferred stock and 2,884 shares of the common stock of the Boise Railroad Company, Ltd. After the loan had been negotiated and the stock of the Boise Railroad Company pledged, as aforesaid, the Idaho Railway, Light & Power Company, being then the owner of all of the stock of the Boise Railroad Company, elected its employees or officers as directors and officers of the Boise Railroad Company, and immediately thereafter caused said officers to convey by proper conveyance all of the property, assets, franchises and privileges of the Boise Railroad Company to the Idaho Railway, Light & Power Company. This being done, the necessity for the existence of the Boise Railroad Company as a corporation ceased, and thereafter the annual license tax of said company was not paid to the state by either the Boise Railroad Company or the Idaho Railway, Light & Power Company, and on the 1st of December, 1913, the charter of the said Boise Railroad Company was forfeited to the state.

At the date of the commencement of this action in the trial court, the capital stock of the Boise Railroad Company, which had theretofore been pledged as collateral security for the payment of the respondent's note, was the stock of a corporation which had forfeited its charter and conveyed all of its physical properties, rights, assets and franchises to the appellant corporation herein. The Idaho Railway, Light & Power Company, by its officers, executed a mortgage or deed of trust to the Guaranty Trust Company of New York, securing an issue of bonds aggregating thirty millions of dollars, which said mortgage or deed of trust covered all the property then owned by the Idaho Railway, Light & Power Company, or which it might thereafter acquire, and under which bonds of said company of the par value of about $9,095,000 had been actually issued. The property transferred to the Idaho Railway, Light & Power Company, which had previously constituted the security as represented by the stock pledged to Jennings, was now claimed by the Idaho Railway,

Light & Power Company as owner, and by the Guaranty Trust Company of New York as trustee under the thirty million dollar mortgage above referred to.

On December 23, 1913, a receiver for the Idaho Railway, Light & Power Company was duly appointed by an order of the United States court for the district of Idaho, southern division.

The answer of the appellant admits the indebtedness of $180,000 to the respondent, and also admits the appointment of a receiver by an order of the United States district court, and the insolvency of the appellant corporation.

This is a brief statement of what appears to be the facts in this case:

At the time of the issuance of summons in this action, the respondent, upon affidavit and sufficient bond, secured a writ of attachment and caused to be attached all of the properties, assets and franchises of the Idaho Railway, Light & Power Company. On May 28, 1914, appellant by its counsel moved in the trial court to discharge the attachment theretofore issued, for the following reasons, to wit:

1. That the affidavit of attachment shows upon its face that the debt upon which action is brought was secured by pledge of stock of the Boise Railroad Company, and fails to show that such security has become valueless.

2. That the defendant Idaho Railway, Light & Power Company is not a nonresident of the state of Idaho within the meaning of the attachment law, but is a foreign corporation that has complied with the constitution and all the laws of Idaho respecting foreign corporations, and as such, by the terms of such statutes is entitled to all the rights and privileges, and subject to the laws applicable to domestic corporations.

3. That the undertaking for attachment is insufficient.

It was conceded upon the argument of this cause that the appellant corporation had fully complied with the constitution and laws of this state respecting foreign corporations. That being true, the appellant insists that it is exempt from attach-

ment under the laws of this state authorizing the attachment of the property of nonresidents.

Sec. 4302, Rev. Codes, as amended by Sess. Laws 1913, page 160, provides, that

"The plaintiff at the time of the issuing of summons, or at any time afterward may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment as in this chapter provided, in the following cases: . . . .

"2. In an action upon a judgment, or upon contract, express or implied, or for the collection of any penalty provided by any statute of this state, against a defendant not residing in this state."

Sec. 2792, Rev. Codes, provides, among other things:

"That foreign corporations complying with the provisions of this section shall have all the rights and privileges of like domestic corporations, including the right to exercise the right of eminent domain, and shall be subject to the laws of the state applicable to like domestic corporations."

The pertinent question for our consideration, therefore, is; Do the provisions of our statute exempt foreign corporations from attachment within the meaning of sec. 4302 and subd. 2, *supra,* for the reason that said nonresident corporation has fully complied with the constitution and all of the laws of the state affecting foreign corporations? In other words, when foreign corporations comply with the constitution and laws of our state, do they occupy the same position with reference to our attachment laws that domestic corporations do, or is their property liable to attachment irrespective of their compliance with the constitution and laws affecting nonresidents?

Should this court reach the conclusion that a foreign corporation is not exempt from attachment by reason of having complied with the constitution and laws of this state affecting foreign corporations, it would be unnecessary to discuss or determine any other question involved in this case.

It is conceded that the appellant is a foreign corporation organized and existing under the laws of the state of Maine,

and unless when it applied to the state of Idaho for admission to do business within this state and by a full compliance with the constitution and laws of this state affecting foreign corporations it thereby became a resident corporation within the meaning of the attachment law, and thereby became exempt from attachment within the meaning of the statutes above cited, it could at this time be considered in no other light than a nonresident.

In the case of *Boyer v. Northern Pac. Ry. Co.*, 8 Ida. 74, 66 Pac. 826, 70 L. R. A. 691, the court says:

"Both upon principle and authority, private corporations are residents of the state in which they are created. They have, and can have, but one domicile—that the state of their birth, and which is fixed by the charter of incorporation. They may migrate into other countries and jurisdictions for the purpose of business, and may be permitted to carry on business in other states; yet, so far as jurisdiction of courts is concerned, they are treated both by our federal courts and by our state courts as residents of the state in which created, and nonresidents of other states. The appellant in this case is a foreign corporation. . . . . Foreign corporations are and remain, to all intents and purposes, so far as jurisdiction of actions is concerned, nonresidents of the state."

In the case of *New York Life Ins. Co. v. Pike*, 51 Colo. 238, 117 Pac. 899, the supreme court of Colorado says:

"The authorities, both court and text-writers, announce as settled doctrine that a corporation organized under the laws of one state is a resident of the state under whose laws it was created; that it cannot be a resident of any other state; and, though such a corporation be permitted by another state, upon compliance with its laws, to carry on its business there, such permission and compliance does not make it a resident of such other state. . . . . To hold otherwise would be to ingraft upon the statute an exception which is wholly foreign to its plain terms, and would be only an amendment thereof."

In Cook on Corporations, 7th ed., sec. 1, it is said: "The domicile, residence, and citizenship of a corporation are in the state where it is created."

To grant to a foreign corporation the right to hold property, to do business, maintain actions, enjoy the benefits of eminent domain, does not make it a domestic corporation, and notwithstanding the right to the enjoyment of all of these privileges, and such others as the legislature may from time to time provide, the residence or citizenship of a foreign corporation would not be changed and it would still, under the great weight of authority, be subject to attachment as a foreign corporation. (*Barbour v. Paige Hotel Co.*, 2 App. Cas. (D. C.) 174; *Cowardin v. Universal Life Ins. Co.*, 32 Gratt. (Va.) 445; *Merrick v. Van Santvoord*, 34 N. Y. 208; *Blackstone Mfg. Co. v. Blackstone*, 13 Gray (Mass.), 488; *Bank of Augusta v. Earle*, 13 Pet. (U. S.), 519, 10 L. ed. 274; *Shaw v. Quincy Min. Co.*, 145 U. S. 444, 12 Sup. Ct. 935, 36 L. ed. 768.)

The supreme court of California in *Waechter v. Atchison, T. & S. F. Ry. Co.*, 10 Cal. App. 70, 101 Pac. 41, had under consideration the question of venue in a suit brought against a foreign corporation, involving the same principle that we are called upon to consider. The court held that "Its primary purpose was apparently to place foreign railway and transportation companies upon an equal standing in this state with domestic corporations, in respect to building railways and exercising the right of eminent domain, and the rights and privileges incident thereto. To construe it as taking such companies out of the operation of the provisions of the general section relating to the place of trial of actions would be to create a specially privileged class of nonresident corporations who would be favored above, not only nonresident natural persons, but all other foreign corporations that might be doing business in the state. This would not only result in creating a special class of corporate defendants in civil actions, but would also arbitrarily discriminate in favor of corporations against natural persons who were nonresidents."

The authorities are uniform that the domicile, residence and citizenship of a corporation are in the state where it is created, and that where the corporation is not domesticated, that is, reincorporated in other states where it does business, it can have but one domicile, one residence and one citizenship,

and that is in the state issuing its charter and maintaining supervision and control over the corporation. (5 Thompson on Foreign Corp., 2d ed., sec. 6629.)

In Drake on Attachments, 7th ed., sec. 80, the proposition is stated as follows:

"The foreign character of a corporation is not to be determined by the place where its business is transacted, or where the corporators reside, but by the place where its charter was granted. With reference to inhabitancy, it is considered an inhabitant of the state in which it was incorporated." These general principles respecting residency or inhabitancy of corporations cannot be denied or questioned. (*Cowardin v. Universal Life Ins. Co.*, 32 Gratt. (Va.) 445.)

It must be conceded that it is beyond the power of the state to forfeit or extend the corporate existence of a foreign corporation. It can exercise no power or control over the corporation as such. A foreign corporation by compliance with the constitution and laws may do business within the state at its pleasure, and when dissatisfied can withdraw at will.

The provisions of our attachment law provide for no such exemption as contended for by appellant, and even though the legislature should attempt to make some such provision looking to the exemption of foreign corporations from attachment by a compliance with the constitution and laws, such legislation might be seriously questioned upon the ground and for the reason that it would be class legislation, or an attempt on the part of the legislature to confer special privileges upon a particular class of persons which could not be enjoyed by all alike. We do not think that the legislature ever intended that a foreign corporation, by complying with the constitution and laws of this state permitting it to do business should be regarded as a resident of this state within the meaning of our attachment laws, and that its property should be exempt from attachment. (*Voss v. Evans Marble Co.*, 101 Ill. App. 373.)

In view of the conclusion reached by this court upon the second ground of objection urged to the validity of the attachment of the property of appellant, it becomes immaterial whether or not the stock pledged by the Idaho Railway, Light

& Power Company to respondent is or became valueless by the fault of respondent or the conduct of appellants.

The third objection urged, namely, that the undertaking for attachment was insufficient, was not discussed by counsel for appellants, either during the oral argument or in the brief filed on appellants' behalf.

The order of the district court refusing to dissolve the attachment is hereby affirmed.   Costs awarded to respondent.

Sullivan, C. J., and Morgan, J., concur.